**EMPRESS HOTEL INC., et al., Plaintiffs,**

**v.**

**The Commonwealth of PUERTO RICO, et al., Defendants.**

**Civil No. 95–2057(JAG).**

United States District Court, D. Puerto Rico.

Aug. 9, 2002.

Pedro T. Armstrong, Rio Piedras, PR, Luis R. Perez–Giusti, Mignucci & Perez Giusti, Linda Backiel, San Juan, PR, Fred L. Abrams, New York, NY, Dennis A. Simonpietri–Monefeld, Guaynabo, PR, for Plaintiffs.

Jo–Ann Estades–Boyer, Commonwealth Department of Justice, Federal Litigation Division, San Juan, PR, Mayra Maldonado–Colon, Pedro Soto Law Office, Jose R. Cintron–Rodriguez, Isabel Abislaiman–Quilez, Jose L. Gandara, Bauza & Davila, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Plaintiffs Carl Palermo (hereinafter, "Palermo") and Empress Hotel (hereinafter, "Empress") (collectively, "plaintiffs") filed this Complaint on August 23, 1995.[2] On September 29, 1995, plaintiffs filed an amended Complaint. (Docket No. 49.) Co-defendant, Commonwealth of Puerto Rico, filed a motion to dismiss on August 25, 1998. (Docket No. 60.) On October 7, 1998, plaintiffs voluntarily dismissed their claim against the Commonwealth. (Docket No. 66.) On November 4, 1998, Judge Casellas issued a partial judgment dismissing all claims against co-defendant Commonwealth. (Docket No. 67.) On February 28, 2001, plaintiffs filed a second amended Complaint. (Docket No. 137.) Plaintiffs now seek equitable relief, *inter alia*[3], for due process and equal protection

---

1. Mario Arroyo, a third year student at Tulane Law School, assisted in the research and preparation of this opinion.

2. This case was originally assigned to U.S. District Judge Hector M. Laffitte. (Docket No. 1.) It was transferred to U.S. District Judge Salvador E. Casellas on November 26, 1997. (Docket No. 52.) Judge Casellas transferred it to this judge's docket on August 8, 2000. (Docket No. 115.)

3. Plaintiffs' second amended Complaint seeks: to nullify the current zoning map, declare invalid the Planning Board's resolution, which changed the zoning classification where plaintiffs' property is located, and monetary damages. Plaintiffs claim that the Empress is similarly situated yet treated differently from other area hotels. Plaintiffs state that the resident's association conspired with the municipality of Carolina, its mayor José Aponte de la Torre, the Planning Board and

violations against defendants the Commonwealth through its Planning Board, the Regulations and Permits Authority (hereinafter, "ARPE", its Spanish Acronym), and ARPE's former director, Eleazar García Marrero (hereinafter, "García") in his personal capacity. The Commonwealth and García in turn have filed a motion to dismiss based on *res judicata* because of the partial summary judgment entered by Judge Casellas dismissing all claims against the Commonwealth and because the pertinent statute of limitations on the claims against García has run. (Docket No. 141.) The Court referred this motion to Magistrate Judge Justo Arenas for a Report and Recommendation. On November 29, 2001, Magistrate Judge Arenas recommended that the Court grant defendants' motion (Docket No. 155). On December 14, 2001, plaintiffs filed objections to the report and recommendation (Docket No. 158).[4]

Pending before the Court are plaintiffs' objections to Magistrate Judge Arenas's Report and Recommendation. Specifically, plaintiffs object to: (1) the Magistrate Judge's recommendation that plaintiffs' claims for equitable relief against the Commonwealth be barred because of *res judicata;* and (2) that the claims against García be barred because of the one-year statute of limitations set forth in *P.R.Laws* Ann. tit. 31, § 5298 (1990).

After careful review of the Magistrate Judge's Report and Recommendation (Docket No. 33), the Court ADOPTS it in its entirety.

## FACTUAL BACKGROUND

On January 30, 1989, the Planning Board approved the re-zoning of the area where the Empress is located from an RT-5 zoning classification (tourist zone) to an RT-4 zone. The re-zoning would turn the areas adjoining the Empress from high-density to low-density, which would restrict the Empress's music and dance activities. (Docket No. 137, Second Amended Complaint ¶¶ 13–15.) Following the re-zoning, the municipality of Carolina sought preliminary and permanent injunctive relief in the Puerto Rico Superior Court against the Empress's music and dance activities relying on defendant García's representation.[5] *Municipio de Carolina v. Empress Hotel,* Civil FPE89–0213 (JR) (hereinafter, "the Carolina case"). Based on García's representation, the Carolina court granted the request for an injunction. The injunction would allow plaintiffs to operate a guesthouse with soft music if they obtained a special permit from ARPE. Plaintiffs sought reconsideration, and later *certiorari* before the Puerto Rico Supreme Court, to no avail.

Plaintiffs thereafter tried to obtain a special permit from ARPE, as required by the Carolina Court. In 1992, during the course of obtaining the permit the Carolina court required, ARPE agents allegedly told plaintiffs they could have music and dance at the Empress without a separate permit. Nonetheless, on July 13, 1992, ARPE denied the request and determined "that plaintiffs' property (Empress) was located on a lot zoned as (RT–5), according

its director Patria Custodio, ARPE and its director, García, and the Commonwealth through its Planning Board and ARPE, to deprive him of his constitutional rights because of his ethnicity. Plaintiffs further claim that this alleged dissimilar treatment caused him loss of revenue, mental anguish and physical suffering. (Docket No. 137, Second Amended Complaint ¶¶ 101–125.)

4. Defendants have not opposed plaintiffs' objections to the Magistrate Judge's Report and Recommendation.

5. Plaintiff does not specify what was García's "representation" in the Carolina court.

to the current Carolina map" and concluded that "plaintiffs' proposed use (for music and dance) was prohibited in 'RT–5' zones." (Docket No. 137, Second Amended Complaint ¶¶ 78 and 82.) ARPE's permit denial also cited additional violations for the improper use of signs, terraces, and parking lots at the Empress. Palermo contends that ARPE's permit denial was arbitrary and motivated by his Italian–American ethnicity.

As a result of ARPE's denial, plaintiffs pursued an administrative appeal. In August, 1993, ARPE denied the appeal on the grounds that the plaintiff had operated a swimming pool, a terrace with bar, and a music and dance area without authorization. (Docket No. 137, Second Amended Complaint ¶¶ 79–89.) As a result of the administrative appeal denial, plaintiffs filed suit in Federal Court on August 23, 1995, while still awaiting ARPE's grant of a final permit for music and dancing, as required by the Carolina injunction.

In June, 1995, the plaintiffs' private investigator reviewed the Planning Board's file related to the zoning resolution pursuant to which plaintiffs' property had been changed from an RT–5 zone to an RT–4 zone classification and determined that documents required by law were missing from the file. It was during this investigation that plaintiffs allegedly discovered a conspiracy to violate their civil rights by the Commonwealth, through its Planning Board, its director, Patria Custodio, as well as ARPE, García, Municipio de Carolina and its mayor Jose Aponte de la Torre.

On October 26, 1996, the new ARPE regional director granted plaintiffs a use permit for the operation of a night club, cabaret, restaurant, dance area, hotel, and related uses in the RT–5 district. Palermo contends that notwithstanding the permit, the zoning map continues to show the Empress is zoned as RT–4. (Docket No. 137, Second Amended Complaint ¶¶ 97–99.)

## DISCUSSION

### I. Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. See *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R.1998). The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations. "Failure to raise objections to the report and recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992) (citations omitted).

### II. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegation as true and draws all reasonable inferences in plaintiff's favor. *Tompkins v. United Healthcare of New England, Inc.,* 203 F.3d 90, 93 (1st Cir. 2000); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England Inc.,* 37 F.3d 12, 14 (1st Cir. 1994). To survive a motion to dismiss the

plaintiffs must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Tompkins,* 203 F.3d at 93. Even when all inferences must be made in plaintiffs' favor, the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The Complaint will be dismissed if under the facts alleged, the Court finds that the plaintiffs will not "prevail on any possible theory." *Berezin v. Regency Sav. Bank,* 234 F.3d 68, 70 (1st Cir.2000); *Tompkins,* 203 F.3d at 93.

### III. Plaintiffs's First Objection to the Recommended Dismissal based on *Res Judicata:*

■ Palermo first objects to the Magistrate Judge's Recommendation that plaintiffs' claim for equitable relief be dismissed because of *res judicata.* The Magistrate Judge concluded that Judge Casellas' partial judgment of November 4, 1998 (Docket No. 67.) bars plaintiffs from raising any equitable relief claims against the Commonwealth. Plaintiffs, on the other hand, claim that Judge Casellas' partial judgment did not specify whether the equitable relief claims were dismissed. Plaintiffs further contend that the Commonwealth's motion to dismiss only addressed monetary damages and that they voluntarily dismissed only the monetary damages. (Docket No. 158.) The Court disagrees with the plaintiffs.

Judge Casellas' partial judgment did not specify what type of claims it was dismissing. (Docket No. 67.) The partial judgment simply granted the Commonwealth's motion to dismiss in light of the plaintiffs voluntary dismissal and the Commonwealth's motion to dismiss. The plaintiffs' voluntary dismissal contained no limitation. The plaintiffs merely state: "the parties agree with the government's argu-

ment and consents [sic] to the dismissal and/or withdrawal of the claim against the Commonwealth." (Docket No. 66). In that same dismissal, the plaintiffs state that their intention was to pursue the claims against the government officials in their individual capacities. This leads the Court to believe that they were not interested in pressing any claims against the Commonwealth.

Judge Casellas' subsequent actions in this case provide further support to our understanding of the November 4, 1988 partial judgment. (Docket No. 67.) On March 30, 2000, the Court granted partial summary judgment against defendant Norma Burgos. (Docket No. 114.) In the March 30, 2000, partial judgment the Court drew a clear distinction between the claims for monetary damages and the claims for injunctive and declaratory relief. The Court made very clear that the latter were being maintained while the former were being dismissed. The Court, however, made no similar distinction when it dismissed the claims against the Commonwealth on the November 4, 1998 partial judgment. (Docket No. 67.) Nor did the Court give any indication that the injunctive and declaratory relief claims were being maintained.

Neither plaintiffs' motion nor Judge Casellas' partial summary judgement gave any indication that the voluntary dismissal of the claim against the Commonwealth would be without prejudice. If the plaintiffs wished to pursue an equitable claim against the Commonwealth, they should have stated so explicitly in their motion for voluntary dismissal. As a result, the Court concludes that Judge Casellas' partial judgment dismissed all claims against the Commonwealth both equitable and monetary. The Court, therefore, adopts the Magistrate Judge's Report and Rec-

ommendation dismissing all claims against the Commonwealth and its agencies.

## IV. Plaintiffs's Second Objection to the Recommended Dismissal based on the Running of the Statute of Limitations

■ Palermo's second objection is to the Magistrate Judge's Recommendation that plaintiffs claims against García, in his personal capacity, be barred by the statute of limitations.

42 U.S.C. § 1983 does not set forth a limitations period for claims brought thereunder. While federal law governs the date of accrual of the cause of action, federal courts borrow the limitations period and tolling doctrine from state law. *See Carreras–Rosa v. Alves–Cruz*, 127 F.3d 172, 174 (1st Cir.1997); *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir. 1994). Under Puerto Rico law, the applicable limitations period for personal injury actions—and, consequently, for plaintiffs' § 1983 claim—is one year. *See* P.R.Laws Ann. tit. 31, § 5298 (1990); *Carreras–Rosa*, 127 F.3d at 174. Under federal law, the one-year period begins to run when the aggrieved party "knows or has reason to know of the injury on which the action is based." *Carreras–Rosa*, 127 F.3d at 174; *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992).

After analyzing the facts in this case, the Court finds that plaintiffs knew or should have known during 1989 about García's allegedly illegal conduct. Plaintiffs' second amended Complaint points out that they did not learn about García's involvement in an alleged conspiracy to violate their civil rights until June 1995 through their private investigator.[6] (Docket No. 137 ¶ 94.) Plaintiffs, however, contend that a Carolina Court, relied on Garcia's

representation when it entered a permanent injunction prohibiting music and dance activities in the Empress as far back as May 31, 1989. (Docket No. 137, ¶ 63.) During the Court proceedings in Carolina Superior Court in 1989, the plaintiffs knew or should have known about the extent and nature of García's and the Commonwealth's alleged actions against them. Although they claim to have found out in 1995 as a result of their private investigator's visit to the Planning Board and review of the re-zoning files from 1989 to 1995, plaintiffs have not given any reasonable explanation for their six year delay in filing the original Complaint nor their additional two year delay in adding García to the amended suit as defendant for the first time in 1997. If plaintiffs had any concerns about the legitimacy surrounding the re-zoning by the Planning Board and denial by ARPE of the permits for their property by ARPE or the role that García may have played in such a denial, they should have been more diligent. As Magistrate Judge Arenas points out: "At best, plaintiff named García Marrero as a defendant *26 months* after he knew or should have known of his involvement (when he filed his initial Complaint in 1995) and at worst he named him some seven years later." (Docket No. 155 at 7.) The Court concurs with Magistrate Judge Arenas that "plaintiffs' second amended Complaint does not point to any reason for this delay" and like the Magistrate Judge "neither does the Court encounter a possible explanation in any of the pleadings." *id.* The record, therefore, points to only one conclusion: plaintiffs' claims against García were brought *after* the one-year statute of limitations had run.

---

6. García was first joined as a defendant in the Amended Complaint filed in September 1997.

(Docket No. 49.)

Accordingly, the Court adopts the Magistrate Judge's Recommendation. Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985 against Garcia are time barred, and must be DISMISSED with prejudice.

## CONCLUSION

After analysis and review of the Magistrate Judge's Report and Recommendation, the Court ADOPTS it in its entirety. (Docket No. 155). Partial judgment shall be entered in accordance with this opinion.

IT IS SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ARENAS, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

This matter is before the court on motion to dismiss the second amended complaint filed by defendants Eleazar García Marrero and the Commonwealth of Puerto Rico on April 23, 2001. (Docket No. 141.) Plaintiffs Empress Hotel and Carl Palermo filed their initial complaint on August 23, 1995. They filed their first amended complaint on September 29, 1995 (Docket No. 49), and a second amended complaint on February 28, 2001. (Docket No. 137.) Plaintiffs are seeking equitable relief for alleged procedural and substantive due process, as well as equal protection violations from the Commonwealth defendant, (hereinafter "the Commonwealth"), from laws, regulations, policies and practices of its Junta de Planificación (hereinafter "Planning Board"), the Regulations and Permits Authority (hereinafter "ARPE"), and ARPE's former director Eleazar García Marrero.

Defendant Commonwealth of Puerto Rico and Eleazar García Marrero, in his personal capacity, filed the instant motion to dismiss based upon insufficiency of service of process and failure to state a claim for which relief can be granted. (Docket No. 141, Motion to Dismiss at 5–6.) The motion is unopposed.

### II. FACTUAL BACKGROUND

In May, 1983, plaintiff Carl Palermo, a former resident of Brooklyn, New York, invested $1,000,000 to purchase land and build a thirty-room hotel, the Empress Hotel, in Carolina, Puerto Rico. He did so allegedly after having followed certain assurances given to him by an agent of the Commonwealth's Economic Development Office. One of the alleged incentives which enticed plaintiff to invest in the hotel was the "Tourism Incentives Law," which plaintiff claims granted hotels a 90% exemption from state and municipal property taxes over the first five years of operation, and a 75% exemption for the following five. Plaintiff also claim it gave hotels a permanent exemption from municipal patents. (Docket No. 137, Second Amended Complaint ¶ 13–15.)

On January 30, 1989, the Planning Board approved the rezoning of the land where the hotel is located from R–5 to RT–4. This rezoning would effectively turn the vicinity around the Empress Hotel from high-density to low-density, which would restrict several hotel activities. Some of the restricted activities under the new zoning included live music and dancing. Plaintiff Palermo claims he did not receive sufficient notice to alert him of the public hearings that preceded the rezoning. It is submitted that the published notices consisted of three newspaper announcements, the language of which was not easily understandable to the reasonable Spanish speaker. (Docket No. 137, Second Amended Complaint ¶ 35–42.) Plaintiff Palermo claims that because of the insufficient notice given him, he did not attend the public hearings and was not able to oppose the rezoning.

Following the resolution, the municipality of Carolina sought preliminary and permanent injunction from the local courts against the hotel's music and dance activities. *Municipio de Carolina v. Empress Hotel*, Civil FPE89–0213 (JR). The complaint alleges that in support of the action, ARPE, through García Marrero, gave Carolina a certification stating that the hotel could not have a dancing permit because it was in the low-density RT–4 zoning designation. Plaintiffs allege that it was during these proceedings that they learned of their new RT–4 zoning. Plaintiffs claim that ARPE never told the hotel that it needed such a permit. The local court concluded that plaintiffs could not operate a hotel but only a guesthouse with soft music. (Docket No. 137, Second Amended Complaint ¶ 55–63.)

Plaintiffs state that on July 13, 1992, the ARPE regional office reaffirmed its denial but agreed that the hotel was in a tourist zone RT–5. Plaintiffs contend that they were allowed to have music and dance following a verbal agreement between Carl Palermo and ARPE, only to have the dance and music formally denied again at a later date. Plaintiff states that this latest denial cited new concerns such as signs, terraces, and parking lots as reasons for the decision. Plaintiff claims that ARPE then decided that music and dance was prohibited in RT–5 zones. In August 1993, the ARPE regional office denied plaintiff's administrative appeal on the grounds that plaintiff had operated a swimming pool, terrace with bar, dance area and music without authorization. Plaintiff alleges that ARPE conditioned any further consideration on submission of a request for a separate construction permit for those works. Plaintiff Palermo did not comply with the request and ARPE denied his permit. (Docket No. 137, Second Amended Complaint ¶ 79–89.)

Plaintiff then filed his initial complaint in August 1995. On November 26, 1996, the new ARPE regional director granted plaintiff's use permit for a night club, cabaret, restaurant, dance area, hotel and related uses in the RT–5 district. Plaintiff contends that notwithstanding the permit, the zoning map continues to show the hotel as zoned RT–4. (Docket No. 137, Second Amended Complaint ¶ 97–99.)

## III. DISCUSSION

Plaintiff claims that his hotel is similarly situated yet treated differently from other area hotels. He alleges that the reason behind this disparate treatment is his Italian–American ethnicity. He states that the resident's association conspired with the municipality and its mayor José Aponte de la Torre, the Planning Board and its director Patricia Custodio, ARPE and its director, Eleazar Garcia Marrero, and the Commonwealth through its Planning Board and ARPE, to deprive him of his constitutional and civil rights because of his ethnicity. He further claims that this alleged dissimilar treatment caused him loss of revenue, commercial reputation, right to best use of property, loss of commercial and personal reputation, uncertainty as to the real zoning of the hotel, mental anguish and physical suffering. Plaintiffs' second amended complaint seeks to nullify the current zoning map, declare the resolution, which changed the zoning invalid, and grant him monetary damages. The unopposed motion seeks to dismiss all claims against the Commonwealth of Puerto Rico and Eleazar García Marrero.

## A. STANDARD FOR A MOTION TO DISMISS

Under Rule 12(b)(6), of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to

state a claim upon which relief can be granted. However, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir.1991); *Marcucci de Mangual v. United States*, 131 F.Supp.2d 263, 264 (D.P.R.2001). The court is required to "indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *see also Berríos v. Bristol Myers Squibb*, 51 F.Supp.2d. 61 (D.P.R.1999). However, in analyzing the motion, the court does not have to entertain " 'bald assertions' or legal conclusions." *Abbott, III v. United States*, 144 F.3d 1, 2 (1st Cir.1998) (citing *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996)); *see also Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 52 (1st Cir.1990) (quoting *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987)) ("[d]espite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation."). When evaluating a motion to dismiss, the court must take the allegations of the complaint as "true, and determine whether, under any theory, the allegations are sufficient to state a cause of action in accordance with the law." *Brown v. Hot, Sexy & Safer Prod., Inc.*, 68 F.3d 525, 530 (1st Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996) (citing *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994)); *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). In its complaint, the plaintiff must present "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)); *see also Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 93 (1st Cir.2000).

### B. STANDARD FOR UNOPPOSED MOTIONS

It is clear that the First Circuit has pronounced that unopposed motions are not to be treated as waived, but that instead "the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991). "[B]efore granting an unopposed summary judgment motion, '[t]he court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.' " *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989); *see Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 451–52 (1st Cir.1992). The First Circuit has applied the same standard to motions to dismiss.

### C. RES JUDICATA CLAIM

The Commonwealth contends that plaintiff is barred from raising monetary and injunctive relief claims against the Commonwealth. Their contention is based on Judge Casellas' order of November 4, 1998 in which he entered partial judgment dismissing the claims against the Commonwealth. (Docket No. 67.) His order was the result of plaintiff's request for voluntary dismissal. (Docket No. 66.) Plaintiff has raised claims for equitable relief against the Commonwealth of Puerto Rico in the second amended complaint. (Dock-

et No. 137, ¶ 5.) Defendants claim that the dismissal order of November 4, 1998 did not specify that only the monetary claims were dismissed, but it instead dismissed all claims against the Commonwealth. Judge Casellas did dismiss the claims against the Commonwealth in this action. The court did not specify that only the monetary claims were dismissed. (Docket No. 67.) Plaintiff's second amended complaint does not mention Judge Casellas' order and it does not attempt to persuade the court that the dismissal order applied only to monetary claims. (Docket No. 137.) Therefore, plaintiff may not raise any claims against the Commonwealth of Puerto Rico in the second amended complaint, as partial judgment was entered on November 9, 1998.

In view of the above, I recommend that co-defendant Commonwealth of Puerto Rico's motion to dismiss be GRANTED.

### D. CLAIMS AGAINST DEFENDANT GARCIA MARRERO

Defendant García Marrero claims that plaintiff learned of his involvement in the rezoning as early as 1989. Plaintiff contends that, relying on defendant García Marrero's representations, a Carolina Court entered a permanent injunction prohibiting music and dance activities at the hotel. (Docket No. 137, ¶ 63.) Plaintiff states that it was during this trial that he learned about the hotel's rezoning to RT–4. (Docket No. 137, ¶ 62.) Defendant García Marrero contends that plaintiff did not name him as a defendant until the amended complaint was filed in September of 1997. (Docket No. 49, First Amended Complaint at ¶ 16.) Therefore, defendant García Marrero moves this court to dismiss the complaint against him as being time-barred.

The Supreme Court has established that the appropriate statute of limitations for section 1983 claims is to be selected from each state. *See Wilson v. García,* 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In the Commonwealth of Puerto Rico, the applicable statute of limitations for a section 1983 complaint is a one-year period beginning when the plaintiff knew or should have known about the injury which gave raise to the action. *See Velázquez–Rivera v. Danzig,* 234 F.3d 790, 795 (1st Cir.2000); *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172, 174 (1st Cir. 1997), *appeal after remand,* 215 F.3d 1311, 2000 WL 543968 (1st Cir.2000), *cert. denied,* 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001); *see also* 31 P.R. Laws Ann. § 5298(2). Plaintiff's second amended complaint points out that he did not learn about García Marrero's involvement until June of 1995. (Docket No. 137, ¶ 94.) At best, plaintiff named García Marrero as a defendant 26 months after he knew or should have known of his involvement, and at worst, he named him some seven years later. Plaintiff's second amended complaint does not point to any reason for this delay. Neither do I encounter a possible explanation in any of the pleadings.

Therefore, I find that plaintiff's claims against Eleazar García Marrero were raised after the one-year statute of limitations had expired for section 1983 claims as stated in 31 P.R. Law Ann. § 5298. Plaintiff is barred from raising claims against him. Since the defense of limitations is successful, I do not discuss other defenses.

In view of the above, I recommend that defendant Eleazar García Marrero's motion to dismiss be GRANTED.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written

objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Secretary of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).