Iris N. LÓPEZ–SANCHEZ, Plaintiff

v.

Eduardo J. VERGARA–AGOSTINI, et al., Defendants

No. CIV.03–1073 SEC JA.

United States District Court, D. Puerto Rico.

Feb. 23, 2005.

Garcia & Fernandez, San Juan, PR, for Plaintiff.

Ana M. Margarida–Juliá, Department of Justice, Federal Litigation Division, San Juan, PR, for Defendants.

### OPINION AND ORDER

ARENAS, Chief United States Magistrate Judge.

This matter is before the court on motion for summary judgment filed by co-defendants Eduardo Vergara–Agostini (hereinafter "Agostini") and Alicia Díaz (hereinafter "Díaz") (collectively "defendants"). (Docket No. 37, Nov. 29, 2004.) As of the date of this opinion and order, defendants' motion for summary judgment remains unopposed by the plaintiff, Iris N. López–Sánchez (hereinafter "López"). Thus, after considering the evidence in the record, the applicable law and for the reasons set forth below, defendants' motion for summary judgment will be GRANTED.

## I. *Background*

López brought the present action against the defendants pursuant to 42 U.S.C. § 1983 claiming that she was discriminated against by reason of her political affiliation in violation of the First Amendment of the United States Constitution. (Docket No. 1.) She also invokes this court's supplemental jurisdiction, 28 U.S.C. § 1367, to assert a claim under article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. (*Id.*) In all, López seeks compensatory and punitive damages as well as cost, interest and reasonable attorney's fees. (*Id.*)

López worked for the Administration for the Training of Future Entrepreneurs and Workers (hereinafter "AAFET" for its Spanish acronym) as Vocational Academic Director. The general allegation in the complaint is that the defendants, acting under color of state law, terminated Lopez' employment at AAFET because of her affiliation to the New Progressive Party (hereinafter "NPP"). Vergara and Díaz were AAFET's Administrator and Special Assistant to the Administrator in charge of Human Resources respectively. Vergara was appointed Administrator of AAFET in 2001, the year in which the Popular Democratic Party (hereinafter "PDP") assumed control of the government of Puerto Rico. He is an active member of the PDP.

The complaint specifically alleges that López commenced her employment relation with AAFET in December of 1990 as Executive Officer V, a transitory position assigned to the Job Corps Program of the Municipality of Barranquitas. The position had a fixed term and was set to expire on July 31, 1991. López' appointment to said transitory position was renewed on August 1, 1991, until July 31, 1992. On August 1, 1992, López was appointed Executive Director I of the Job Corps Program. The position was also transitory, set to expire on December 31, 1992. But her appointment was renewed on a year to year basis until August 1, 1994, when she was appointed to yet another transitory position: Programs Director. The title of that position was subsequently changed to Academic Vocational Director, the position that López held at the time she was discharged. This position apparently depended on the assignment of federal funding from year to year.

The complaint further asserts that Law No. 256 of December 28, 1995 (hereinafter "Law No. 256"), amended the Puerto Rico Public Service Personnel law, 3 P.R. Laws. Ann. § 1301 *et seq.*, to grant regular career employment status to all transitory employees with more than one year of service. The new law required that the transitory employee perform permanent functions of career service nature in government agencies regulated by Puerto Rico's Public Service Personnel law. On July 1, 1996, and pursuant to Law No. 256, López, along with several other employees, was granted regular career employment status. By virtue of this, she acquired regular career status in her Academic Vocational Director position at AAFET since she had occupied said position for more than one year.

It is alleged, however, that in January of 2001, when the PDP assumed control of the central government and Vergara was appointed Administrator of AAFET, he "set in motion a chain of events to fabricate an administrative case against plaintiff." (Docket No. 1, at 5, ¶ 22.) He is alleged to have done so under color of state law, motivated by López' affiliation to the rival political party, and with the purpose of annulling her appointment to a career position in order to terminate her employment. Vergara did in fact serve López with a written notice of intent to terminate her employment. A pre-termi-

nation hearing was held at López' request, but on February 4, 2002, López was officially terminated. The grounds adduced for the termination was Vergara's understanding that López did not qualify for regular career status under Law No. 256.

Vergara is also charged with having disregarded an express remedy provided by Law No. 256 whereby an employee found to be ineligible for a regular career appointment, had to be included in a preference registry to occupy existing vacant permanent positions at AAFET, that were equal or similar in class to the position previously held by said employee. Finally, López claims that equally situated employees, members of the PDP, were not terminated and that her functions are being performed by a PDP member.

Co-defendants Vergara and Díaz have moved for summary judgment claiming, inter alia, that López' termination was not politically motivated. On the contrary, it is defendants' contention that there are legitimate reasons for the adverse employment action, namely that López' appointment was null and void because it was in violation of AAFET's personnel regulations and Puerto Rico's Public Service Personnel Act. Defendants further maintain that López' personnel file was audited neutrally to determine whether it conformed with public service personnel law and regulations, regardless of political affiliation. Alternatively, the defendants argue that they escape liability as a matter of law under the defense set forth by the Supreme Court in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Defendants' motion for summary judgment was filed on November 29, 2004. However, López has failed to file a response in opposition to defendants' motion. Therefore, I analyze defendants' request for brevis disposition without the benefit of López' opposition.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. *López–Carrasquillo v. Rubianes,* 230 F.3d 409, 413 (1st Cir.2000) (quoting *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." *Id.; see also Carroll v. Xerox Corp.,* 294 F.3d 231, 236–37 (1st Cir.2002) (quoting *J. Geils Band Employee. Benefit Plan .v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1251 (1st Cir.1996)) (" '[N]either conclusory allegations [nor] improbable inferences'. are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that

party's favor. *See Patterson v. Patterson*, 306 F.3d 1156, 1157 (1st Cir.2002). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. *Nereida–González v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

Rule 56(e) of the Federal Rules of Civil Procedure governs the obligation of adverse parties to respond to summary judgment motions. *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 115 (1st Cir.2004.) The rule provides in pertinent part that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). While Rule 56(e) imposes on an adverse party the obligation to respond to a summary judgment motion, as stated, his or her failure to do so does not mean that the moving party is automatically entitled to summary judgment. *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir.1989). What it means is that the non-moving party loses his or her ability to oppose the motion. *See Mullen v. St. Paul Fire & Marine Ins. Co.*, 972 F.2d 446, 451–52 (1st Cir.1992) (referring to a local rule of court requiring that an opposition be filed within a certain deadline). "[T]he district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *Id.* at 452 (quoting *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991)); *see also Empress Hotel Inc. v. Puerto Rico*, 218 F.Supp.2d 189, 197

(D.P.R.2002). In fact, the court must make sure that the moving party has met its burden of demonstrating that there are undisputed facts entitling that party to judgment as a matter of law. *Jaroma v. Massey*, 873 F.2d at 20.

With this principles as framework, I analyze the evidence in the record to determine if the defendants have met their burden of showing an absence of genuine issues of material fact entitling them to judgment as a matter of law.

### III. *Applicable Law and Analysis*

■ For a claim to be actionable under 42 U.S.C. § 1983, sufficient evidence must be presented showing that the action complained of was committed under color of state law and that said conduct worked a denial of rights secured by the United States Constitution. *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 32 (1st Cir. 1996). There are two aspects to the second prong: (1) there must be an actual deprivation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the deprivation of such right. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). Additionally, the causal connection element requires that plaintiffs establish for each defendant, that the defendant's own actions deprived the plaintiff of his or her protected rights. *Id.* at 562 (holding that liability may not be predicated upon a theory of *respondeat superior* because a supervisor can be liable only for his own acts or omissions).

■ In addition, it is also set in stone that political patronage restrains the freedom of belief and association, core activities protected by the First Amendment. *Cosme–Rosado v. Serrano–Rodríguez*, 196 F.Supp.2d 117, 122 (D.P.R.2002), *aff'd*, 360 F.3d 42 (1st Cir.2004) (citing *Elrod v. Burns*, 427 U.S. 347, 354, 96 S.Ct. 2673, 49

L.Ed.2d 547 (1976)). In a trilogy of cases, *Elrod v. Burns,* 427 U.S. at 354, 96 S.Ct. 2673, *Branti v. Finkel,* 445 U.S. 507, 516, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court addressed the constitutionality of political patronage holding "that non-policymaking public employees are protected [under the First Amendment] from adverse employment decisions [that are] based on their political affiliation." *Padilla–García v. Rodríguez,* 212 F.3d 69, 74 (1st Cir.2000) (footnote omitted). A *prima facie* case of political discrimination is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that such conduct was a substantial or motivating factor in the adverse employment decision. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 287, 97 S.Ct. 568; *see also Padilla–García v. Rodríguez,* 212 F.3d at 74. In other words, a plaintiff has to prove that his or her political persuasions. were a substantial or motivating factor in the challenged action. *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 11–12 (1st Cir.1996). In this respect, to survive a motion for summary judgment, the plaintiff has to point to evidence in the record that would allow "a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." *Rivera–Cotto v. Rivera,* 38 F.3d 611, 614 (1st Cir.1994).

Once a *prima facie* case has been established, then the employer is given an opportunity to demonstrate that it would have taken the same action regardless of plaintiff's political beliefs. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 287, 97 S.Ct. 568. The burden-shifting framework in *Mt. Healthy* goes directly to causation. *Padilla–García v.*

*Rodríguez,* 212 F.3d at 74. Therefore, even if a plaintiff meets his or her initial burden of establishing that political affiliation or beliefs were a motivating factor in the adverse employment decision, "that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[ ] between a result caused by a constitutional violation and one not so caused.'" *Sánchez–López v. Fuentes–Pujols,* 375 F.3d 121, 131 (1st Cir.2004) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 286, 97 S.Ct. 568). The plaintiffs thus need to show that there is a causal connection linking the adverse employment action to their political persuasions. *See Torres Ocasio v. Meléndez,* 283 F.Supp.2d 505, 515 (D.P.R.2003) (citing *LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996)).

In this case, although the defendants generally assert that López has failed to establish a *prima facie* case of political discrimination, their main contention is that even assuming her success in such a task, they have shown that they would have taken the same actions regardless of her political beliefs. According to defendants, López was appointed to the career position of Academic Vocational Director in violation of the personnel regulations of AAFET and Puerto Rico's Public Service Personnel Law. Therefore, said appointment was null and void, and defendants maintain that they would have taken the same action regardless of López' political persuasions. The following material facts are uncontested:

1. In January of 2001, co-defendant Vergara gave instructions to AAFET's Human Resources Director to evaluate the personnel files of all the employees working at the agency.

2. Co-defendant Díaz commenced in her position of Special Assistant to the

Administrator in charge of human resources in or around March of 2001. She evaluated close to two hundred personnel files. The purpose of the evaluation was, among others, to determine salary differentials, given AAFET's difficult budgetary situation. The process took about a year and a half to be completed.

3. During the evaluation, Lopez' appointment to career status was the only one found to be illegal under the provisions of Law No. 256. Further, the evaluation of López' file revealed, according to the defendants, that she did not qualify for a career appointment under Law No. 256.

4. More specifically, plaintiff did not meet the years of service requirement for her to become a regular career employee. On December 1, 1995, Mr. Osvaldo Maysonet, then Director of AAFET's Budget Office, certified that Lopez' position was "permanent with a recurrent assignment." Therefore, being permanent, the position was ineligible for a change to regular career status under Law No. 256.

5. Faced with these findings, Vergara requested advise from the Central Labor Advisory and Human Resources Administration Office (hereinafter "OCALARH" for its Spanish acronym).

6. OCALARH issued its opinion letter on August 31, 2001. In it, OCALARH explained the purpose and requirements of Law No. 256 and opined that if indeed the position occupied by López was a "permanent" position,[1] then her change in status from transitory to regular employee was contrary to law because she was literally excluded from the application of Law No. 256.

7. Nevertheless, OCALARH did not issue any recommendations as to the course of action the defendants had to take regarding López' employment. AAFET was simply advised to verify López' employment status at the time of her change to a regular career position.

8. López' employment was terminated on February 4, 2002.

9. Since that date, the position of Academic Vocational Director has remained vacant because of the agency's fiscal situation. One Mr. Alvarado, a career employer who had knowledge of the Job Corps Program, was appointed to direct said program on an interim basis.

I have independently perused the record as I must do even when presented with an unopposed motion for summary judgment. However, López' failure to oppose defendants' motion proves fatal to her case simply because she cannot establish (1) that her political affiliation was a substantial factor in the decision to fire her; and (2) because she cannot controvert defendants' position that they would have taken the same corrective action regardless of political affiliation.

■ First, as to the *prima facie* case, the court is only presented with plaintiff's allegation in the complaint that her termination was politically motivated. But without presenting any evidence to support such a conclusion, plaintiff's position is reduced to the assertion that a constitutional violation occurred because the parties had competing political views. And in the First Circuit, it has been consistently held that "[m]erely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Correa–Martínez v. Arrilla-*

---

1. In 1995 Maysonet described López' position as a "permanent" position. In 1996, however, he classified the position as "regular." The distinction between these two terms in the context of Puerto Rico Personnel law is not clear from the record.

*ga–Beléndez,* 903 F.2d 49, 58 (1st Cir. 1990).

▇▇▇ With respect to the *Mt. Healthy* defense, López' situation fares no better. Even if I assume that she can establish political affiliation as the motivating factor for the employment decision, she presents no evidence to create a factual dispute regarding defendants' argument that they would have taken the same action against her after determining that the appointment was null and void. *See Sánchez–López v. Fuentes–Pujols,* 375 F.3d at 131–32. In fact, it appears from the record that the defendants terminated the employment of two other employees whose appointments were found to be null and void, albeit not under Law No. 256.

I cannot conclusively hold that defendants' determination regarding the illegality of López' appointment was correct as a matter of law. In light of the record as to the positions held by López, the inconsistencies in said record,[2] the changes in her job descriptions and numerous classifications (trust, transitory, regular, permanent), I find that reasonable minds could differ as to whether López would have qualified to receive career status under Law No. 256. Additionally, it appears that the defendants incorrectly concluded, in clear disregard to the opinion of OCA-LARH, that simply because López did not qualify for career status under Law No. 256, that she also did not qualify to be included in the preferential registry. The testimony of both Vergara and Díaz appear to concede that such conclusion was

erroneous. Nevertheless, right or wrong, it is not for this court to determine the correctness of defendant's employment actions regarding López. Rather, the court needs to ascertain whether a constitutional violation stems from said employment action. And as stated above, López has failed to present evidence that her dismissal from AAFET was motivated by her political affiliation, regardless of whether it was, as a matter or law, correct.[3]

To sum up, by failing to oppose defendants' motion for summary judgment, López failed to establish a *prima facie* case of political discrimination because she could not show that the adverse employment action was substantially based on her affiliation to the NPP. Moreover, even assuming that a *prima facie* case was established, the defendants demonstrated that there is no factual dispute regarding their contention that they would have taken the same action against López without consideration of her political affiliation. And my independent review of the record reveals that while not necessarily correct, the determination of the illegality of López' appointment and hence her termination, cannot be said to have been based on a politically discriminatory animus. Therefore, the defendants defeat liability under the *Mt. Healthy* defense.

Having jettisoned the claim upon which López anchored federal jurisdiction, I also dismiss her state law cause of action. *See González–De–Blasini v. Family Dep't,* 377 F.3d 81, 89 (1st Cir.2004) ("Under 28

---

2. I must point out that the motion for summary judgment submitted by the defendants, specifically the exhibits submitted in support, is not a paragon of organization. The exhibits are not clearly identified, and the court had to guess whose deposition testimony it was reading and to search the entire record in its analysis of the present motion.

3. The correctness of the personnel transactions involving López is appropriate for the Puerto Rico Appeals Board for the Personnel Administration System ("JASAP" for its Spanish acronym). And it appears from the record that López did file an appeal with JASAP. However, I am unaware of any judgment or decision of that agency regarding plaintiff's administrative appeal.

U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.' "); *see also Claudio–Gotay v. Becton Dickinson Caribe, Ltd.,* 375 F.3d 99, 104–05 (1st Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1064, 160 L.Ed.2d 1067, 2005 WL 126667 (2005); *Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."). Dismissal of said cause of action is without prejudice.

IV. *Conclusion*

In view of the above, defendants' motion for summary judgment is hereby GRANTED and plaintiff's complaint is dismissed in its entirety. The Clerk will enter judgment in accordance with this opinion.

SO ORDERED.