Iris N. LÓPEZ–SÁNCHEZ, Plaintiff

v.

Eduardo J. VERGARA–AGOSTINI, et al., Defendants

No. CIV.03–1073 SEC JA.

United States District Court, D. Puerto Rico.

Feb. 24, 2006.

Lauracelis Roques–Arroyo, Office of the Governor—Office of the Legal, San Juan, PR, Luis F. Del-Valle-Emmanuelli, Orlando Fernandez, Garcia & Fernandez, San Juan, PR, for Plaintiff.

Ana M. Margarida–Julia, Department of Justice, Commonwealth of Puerto Rico, PR, Maria Judith Surillo, Department of Justice, San Juan, PR, Francisco A. Ojeda–Diez, P.R. Department of Justice—Federal Litigation, San Juan, PR, for Defendant.

## OPINION AND ORDER

ARENAS, United States Chief Magistrate Judge.

This matter is before the court on renewed motion under Rule 50, Federal Rules of Civil Procedure, for judgment as a matter of law; under Rule 59 for new trial, or in the alternative, to amend judgment filed by co-defendants Eduardo Vergara–Agostini (hereinafter "Vergara") and Alicia Díaz (hereinafter "Díaz") (collectively "defendants") on December 23, 2005. (Docket No. 90.) Plaintiff filed her opposition to all the motions on January 18, 2006. (Docket No. 98.) After considering the evidence in the record, the applicable law and for the reasons set forth below, defendants' motions for judgment as a matter of law, for new trial, or in the alternative, to amend judgment are DENIED.

Iris N. López Sánchez brought this civil action against the defendants pursuant to 42 U.S.C. § 1983, claiming that she was discriminated against by reason of her political affiliation in violation of the First Amendment of the United States Constitution. (Docket No. 1.) The case was tried to a jury on December 5, 6, 7, 8, and 9, 2005. The jury found her political affiliation (New Progressive Party) was a substantial or motivating factor in her being terminated. It further found that her political affiliation was also a substantial and motivating factor in her not subsequently having been placed in a preference registry to make her eligible for re-employment. The jury further found that the defendants did not prove that she would have been terminated anyway or that she otherwise would not have been placed in a preference registry. The jury awarded compensatory damages of $198,960 and punitive damages against Mr. Vergaga–Agostini of $9,355 and Ms. Díaz–Rivera of $6,237. (Docket No. 84.)

Plaintiff started working for the Administration for the Training of Future Entrepreneurs and Workers (hereinafter "AAFET" for its Spanish acronym) in 1990. While she was Vocational Academic Director, she was discharged on February 4, 2002 from AAFET, allegedly because of her affiliation to the New Progressive Party (hereinafter "NPP"). Co-defendants Vergara[1] and Díaz were AAFET's administrator and special assistant to the administrator in charge of Human Resources respectively.

Plaintiff, a very active member of the PNP, testified that she began her employment relation with AAFET in December, 1990 in a transitory position assigned to the Job Corps Center at the Municipality of Barranquitas as Training Director. Prior to this employment, she had been employed as a health teacher with the Department of Education since February, 1977. As a health teacher, she was in a career position. She was offered leave without pay to be able to take the Job Corps position.

At Job Corps, she was selected through an interview process. The position she held had a fixed term (transitory) and was set to expire on July 31, 1991. Ms. López' appointment to said transitory position was renewed on August 1, 1991, until July 31, 1992. On August 1, 1992, Ms. López was appointed Executive Director I of the Job Corps Program. The position was also transitory, set to expire on December 31, 1992. But her appointment was renewed on a year to year basis until August 1, 1994, when she was appointed to yet another transitory position: Programs Director. The title of that position was subsequently changed to Academic Vocational Director, the position that Ms. López held at the time she was discharged. This position apparently depended on the assignment of federal funding from year to year. If her position were not renewed, she could return to the Department of Education.

The government passed Law 256[2] which resulted in all qualifying transitory positions becoming permanent after one year. Specifically, plaintiff would have had to hold a transitory position for at least one year by July 1, 1996 to qualify for permanency.

Plaintiff testified that once Mr. Vergara arrived at AAFET, she reported to him.

---

1. Mr. Vergara was appointed administrator of AAFET in 2001, the year in which the Popular Democratic Party (hereinafter "PDP") was victorious in the general elections.

2. Law 256 of December 28, 1995, amending Law 56 of August 16, 1989.

At one point in her employment, he asked her to sign in four times a day, like punching a clock. This had to be done at his office on the list of trust employees. Plaintiff was required to sign in but the trust employees were not. Francisco Alvarado, a member of the PPD, and someone plaintiff had previously supervised, was sent people to interview while she was not sent any. Mr. Alvarado was also asked to check the numbers on the reports which plaintiff would prepare, to determine if the numbers were real. Plaintiff would visit the Job Corps centers and was reprimanded, which she felt was unjust. These conditions lasted from September 2001 to February 2002. She then received a letter from Mr. Vergara in which she was told that he was going to annul her position. After an administrative hearing, she was fired. The hearing lasted two hours. When she was fired, plaintiff was then escorted out by the director of security and was told that she could not take anything with her.

Plaintiff felt very angry, in despair, spent months crying. She had one child studying medicine, the other studying law. By February, 2002, she had 24 years of government service and expected to retire at 30 years of service. Plaintiff has fibromyalgia. After she was fired, there were economic problems. Her husband and she separated for a few months. She lost her salary and benefits of $4,200 a month as well as yearly bonuses which went from $750 to $1,000 per year. AAFET contributed 8.5% of her salary into her retirement fund and she contributed 9% to the same.

Of 150 to 200 employees that were made permanent by Law 256, plaintiff was the only one fired. Plaintiff testified that the only reason for her being fired must have been that she was a member of the PNP. That was the only reason.

Mirinda Vicenty Nazario, now a superior court judge, testified that as AAFET's executive director, she had appointed plaintiff based upon her capacity and performance. When Law 256 of 1995–Law of Permanency-was passed, many people benefitted from it. Plaintiff qualified under Law 256 because plaintiff's position was on the list of those that qualified for permanence so Ms. Vicenty gave the instruction so that her position became permanent since plaintiff had been in it for one year. Ms. Vicenty testified that plaintiff was in a mistaken trust position according to the employee category. The state budget officer had said that the position was permanent and not a trust position. A program director made $3,058 a month.

José Gregorio Camacho testified that he worked in Job Corps from February 1993 until October 2001 but had also worked as director (or sub-director) of Human Resources of AAFET from July 1993 to 1997, and was a co-worker of plaintiff in AAFET. Then Law 256 of 1995 was passed which provided for the conversion from transitory to permanent. Mr. Camacho said that 100 to 125 people benefitted from the conversion. He emphasized that there were no trust positions in Job Corps, and that all of the Job Corps positions were career positions, as was plaintiff's position. He noted that by error, plaintiff was incorrectly classified as a trust position, which never existed in Job Corps. He himself authorized changes in plaintiff's file in 1994 to correct the same.

Mr. Camacho himself was fired by the new PPD administration (Mr. Vergara) because his appointment was supposedly void. He did not qualify for conversion because as director, he held a trust position and was not a transitory employee. Job Corps, which was federally funded, did not have an approved classification plan.

The recommended compensation was $3,058 a month. Job Corps salaries were higher than at AAFET.

Vivian Cintrón Pérez, who benefitted from Law 256, had two trust positions in AAFET under the PNP administration, and is affiliated with the PNP, was the Director of Human Resources at AAFET in 1997 when Mr. Camacho was the director.[3] She testified that the 1998 review caused by budgetary problems revealed no irregularities in plaintiff's file. After a review of her own personnel file, her salary differential was taken away. The Administration System Board of Appeals (hereinafter "JASAP" for its Spanish acronym) said the agency was incorrect in taking this action, but the court of appeals decided that the action of AAFET was correct.

Alicia Díaz Rivera testified that she worked in the central office of Human Resources of OCALARH[4] from 1992 to 1994, as well as at the Personnel Administration Office and had a career position as special aide to the director. In 2001 she held a trust position, Director of Program Development, Executive Officer V, in AAFET. She was in charge of all human resources training activities for the agency. When Mr. Vergara became head of the agency in 2001, she became an advisor in human resources. As part of her duties, she reviewed more than 100 personnel files, including plaintiff's file, in order to determine the legality of the salary differentials, and also to check who benefitted from Law 256 to see if the conversions had been done according to the Act. She had to analyze each transaction to see if there was a justification and to assure compliance with the Uniform Compensation Act. It was determined that plaintiff did not qualify under Law 256, and was the only one fired and, based upon Ms. Díaz' recommendation, the only one for which an opinion was sought from OCALARH, which rendered no opinion.

Ms. Díaz testified that plaintiff was fired because she had been in a permanent position at the time of Act 256 conversion, although Ms. Díaz believed that she was not, based upon plaintiff's receiving an increase in monthly salary of $1,058, which increase placed plaintiff in a trust position. Ms. Díaz carefully traced the salary trajectory of plaintiff, referring to regular and special change reports. A report of August 1, 1994 changed the salary from $2,000 to $3,058, which reflected a trust position. Ms. Díaz made reference to the people that were allowed to convert under Law 256, and that not all transitory positions were allowed. Those were to appear on a roster of eligibles, a preference registry, so that they could be called up if a position they qualified for or a similar position became available.

OCALARH had warned that if AAFET had found the position to be permanent, and thus the change not guaranteed, then plaintiff could have been placed in a preference registry, so that she could be placed in line to occupy a vacancy. AAFET never made a preference registry. There is currently a vacant position in AAFET which is the vacancy for the position plaintiff held, a position she clearly qualifies for. (There has been no recruitment for that position.) Notwithstanding plaintiff's file, and that Job Corps salaries

---

3. At present, Ms. Cintrón is the Vocational Academic Director of Institutes, who previously worked in Yabucoa where she lives, and was transferred to Coamo by Mr. Vergara on September 1, 2004, after being deposed · on August 13, 2004.

4. OCALARH is the acronym for Central Labor Advisory and Human Resources Administration Office.

are higher than AAFET salaries, Ms. Díaz felt that plaintiff could have been removed at any time because, in her own opinion, plaintiff had held a trust position. Thus, she did not qualify for inclusion in the preference registry, although OCALARH had advised to include her in a registry. While not ignoring the OCALARH letter, she disagreed with the same.

Mr. Vergara testified that he had worked for Governor Calderón when she was the mayor, and is affiliated with the PPD. When he assumed his position as administrator of AAFET in January, 2001 (the PPD having assumed power), there was a deficit of $5.5 million, causing him to give instructions, and guidelines as to administrative expenses. When he came to AAFET, he hired Ms. Díaz as his assistant. When Mr. Vergara was appointed the administrator of AAFET, he learned that there were three programs. Two of the programs were of trust positions. He could not remove plaintiff from her position because hers was not a trust position. Mr. Vergara also gave instructions to Human Resources to review the personnel files of employees with salary differentials, so that some were eliminated and others reduced, depending on the needs of the service. The plaintiff's position was a regular/career service position but the appointment was null and void due to the last personnel change when plaintiff's position was altered by an order from Mr. Camacho which gave her regular status. Mr. Camacho and plaintiff had action taken against AAFET. Both had administrative hearings after which Mr. Vergara made the final decision. Both appealed to JASAP. Mr. Camacho appealed to JASAP which found in his favor. That finding was appealed to the Puerto Rico Court of Appeals which revoked JASAP and sustained the agency's position. Plaintiff also appealed and there has yet to be a decision from JASAP, according to Mr. Vergara.

He testified that plaintiff's appointment was null and void because she did not hold a transitory position for at least one year (a position of fixed duration), as required by article 4(a) of Law No. 256. There were no complaints about plaintiff.

Mr. Vergara served Ms. López with a written notice of intent to terminate her employment based upon her null appointment under Law 256 since Mr. Vergara understood that Ms. López did not qualify for regular career status under Law No. 256. A pre-termination hearing was held at Ms. López' request, but on February 4, 2002, Ms. López was officially terminated. However, the OCALARH letter noted that if plaintiff had a permanent position, and should not have been transferred, she had to be placed in a preference registry for vacant positions which were equal or similar to the position she held. The preference registry was never created. The OCALARH decision left the personnel decision to Mr. Vergara but concluded that plaintiff would have qualified for conversion. Mr. Vergara had previously determined that plaintiff's appointment was null. The OCALARH letter said that if plaintiff did not qualify for Act 256, she should have been placed in a preference registry.

The defendants argue, and detail such argument, that Ms. López' appointment as director of the Job Corps Program with a category of regular in career service was null and void because there was no successive track in the change reports of her personnel records, that it was in violation of AAFET's personnel regulations, and that plaintiff was not a transitory employee and could not be converted under Act 256 to a regular position. Defendants further maintain that Ms. López' personnel file was audited neutrally to determine whether it conformed with public service personnel law and regulations, regardless

of political affiliation. Alternatively, the defendants argue that they escape liability as a matter of law under the defense set forth by the Supreme Court in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

It is Ms. López' position that the defendants' cannot invoke the *Mt. Healthy* defense inasmuch as their decision was arbitrary and contrary to law in light of the legal opinion rendered by OCALARH where it advocated neither in favor of nor against plaintiffs' termination.

## RULE 50

■ For a claim to be actionable under 42 U.S.C. § 1983, sufficient evidence must be presented showing that the action complained of was committed under color of state law and that said conduct worked a denial of rights secured by the United States Constitution. *Romero–Barceló v. Hernández–Agosto*, 75 F.3d 23, 32 (1st Cir. 1996). There are two aspects to the second prong: (1) there must be an actual depravation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the depravation of such right. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989). The causal connection element requires that plaintiff establish for each defendant, that the defendant's own actions deprived the plaintiff of her protected rights. *Id.* at 562. "Under Puerto Rico law, career employees have a property interest in their continued employment." *Colón–Santiago v. Rosario*, 438 F.3d 101, 108 (1st Cir.2006) (citing *Figueroa–Serrano v. Ramos–Alverio*, 221 F.3d 1, 6 (1st Cir.2000)) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ "A prima facie case of political discrimination is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that such conduct was a substantial or motivating factor in the adverse employment decision." *López–Sánchez v. Vergara–Agostini*, 359 F.Supp.2d 48, 53 (D.P.R.2005) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568; *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir. 2000)). Plaintiff has to prove that her political persuasions were a substantial or motivating factor in the challenged action. *Ortiz–Piñero v. Rivera–Arroyo*, 84 F.3d 7, 11–12 (1st Cir.1996).

Once a prima facie case has been established, then the [government] employer is given an opportunity to [show] that it would have taken the same action regardless of plaintiff's political beliefs. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568. The burden-shifting framework in *Mt. Healthy* goes directly to causation. *Padilla–García v. Rodríguez*, 212 F.3d at 74. Therefore, even if [López] meets ... her initial burden of establishing that political affiliation or beliefs were a motivating factor in the adverse employment decision, "that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[ ] between a result caused by a constitutional violation and one not so caused.'" *Sánchez–López v. Fuentes–Pujols*, 375 F.3d 121, 131 (1st Cir.2004) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 286, 97 S.Ct. 568). The plaintiff[ ] thus needs to show that there is a causal connection linking the adverse employment action to [her] political persuasions. *See Torres–Ocasio v. Meléndez*, 283 F.Supp.2d 505, 515 (D.P.R.2003) (citing *LaRou v. Ridlon*, 98 F.3d 659, 662 (1st Cir.1996)).

*López–Sánchez v. Vergara–Agostini,* 359 F.Supp.2d at 53.

However, in order to prevail in a Rule 50 motion, the defendants "need to show that no reasonable jury could have denied their *Mt. Healthy* defense." *Rodríguez–Marín v. Rivera–Gonzalez,* 438 F.3d 72, 80–81 (1st Cir.2006) (citing *Sheils Title Co. v. Commonwealth Land Title Ins. Co.,* 184 F.3d 10, 19 (1st Cir.1999)).

The defendants argue that plaintiff has failed to establish a prima facie case of political discrimination against them, pointing out that the circumstantial evidence, when taken as a whole, does not give rise to a plausible inference of discriminatory inference. Membership in different political parties is not enough. The defendants play down plaintiff's membership in the PNP, summarizing her testimony in that she was active in the party. However, plaintiff testified that she had been affiliated with the PNP for 30 years, active in its affairs, election committee, fund raising, active in the PNP Caguas annual assembly, and had participated in caravans. Plaintiff concluded her testimony by saying that since she was the only one fired of those that benefitted from Law 256, the only reason for her firing must have been that she was a PNP member, then said that the only reason was her PNP membership.

Plaintiff counters the argument by pointing out that immediately following plaintiff's termination, the defendants named Mr. Francisco Alvarado, a PDP member, to assume her duties and functions in the Job Corps Program. She also notes the non-committal nature of the OCALARH legal opinion, and that therefore the firing was individually voluntary and arbitrary. Plaintiff counters the argument that plaintiff had a trust position by pointing out, referring to Ms. Díaz' testimony, that if plaintiff had had a trust position, she could have been fired at any time without the need to seek an opinion from OCALARH. Indeed, she could have been discharged without an administrative hearing if she had held a trust position.

According to defendants, Ms. López was appointed to the career position of Academic Vocational Director in violation of the law. Therefore, said appointment was null and void, and defendants maintain that they would have taken the same action regardless of Ms. López' political persuasions.

■ Under Rule 50, I must consider the evidence and all inferences reasonably drawn therefrom in the light most favorable to the non-movant. That evidence could lead a reasonable jury to believe that there was discriminatory animus in the discharge of plaintiff as well as in her not being placed in a preference registry for a position which she qualifies, and which position is still available. The evidence presented by the parties does not lead to one conclusion and reasonable minds may differ in reaching different conclusions. This is not a case of overwhelming evidence of political discrimination but the evidence presented is sufficient to sustain the findings of the jury. The Rule 50 motion is therefore DENIED.

## RULE 59 MOTION FOR NEW TRIAL

The defendants argue that the verdict of liability was against the weight of the evidence, first, because Law 256 did not apply to plaintiff's position since the category as a regular or career employee was null and void, and second, because the position of Job Corps Program was a trust position. Finally, they argue that they are entitled to qualified immunity, or in the alternative, that the court should have abstained from entering in to the jury trial until the per-

sonnel law issues were resolved, and that the size of the verdict is excessive.

Ms. López was affiliated to the NPP and Mr. Vergara to the PDP. Mr. Vergara was aware of Ms. López' affiliation to the PNP. Mr. Vergara would bypass plaintiff, who was the director of the Job Corps Program, and go to Mr. Francisco Alvarado, a PDP affiliate, to obtain reports regarding said program. When the defendants performed the evaluation of Human Resources files, the only appointment found to have been made in violation of Law 256 was that of Ms. López. The defendants requested the advice of OCALARH with respect to Ms. López' appointment. OCALARH issued an opinion on the matter on August 31, 2001. OCALARH did not make any particular finding or reached a specific conclusion regarding Ms. López' appointment. The opinion letter said that if Ms. López held a permanent position prior to her Law 256 status change, the appointment would be contrary to law because she would have been literally excluded from the application of said law. OCALARH also stated that if the agency determined that her appointment was indeed contrary to Law 256, then she had to be included in a preference registry as mandated by Article 6 of the law. Mr. Vergara had already formed an opinion about the legality of Ms. López' appointment. The defendants did not include Ms. López in the preference registry notwithstanding OCALARH's express finding that she had a right to so be included. The record reflects that following Ms. López' termination, Mr. Vergara designated a PDP sympathizer as acting director of the Job Corps Program. The defendants emphasize that plaintiff's position was one of trust, but their own actions may place a reasonable jury in the position to doubt such a defense since it was made clear that trust positions do not have the protection which plaintiff sought and

which the defendants recognized. A fortiori, if anything, the question of whether plaintiff's position was a trust position remained a jury question. A jury could readily determine that plaintiff's political affiliation played a substantial role in the decision to terminate her. *Vázquez–Valentín v. Santiago–Díaz*, 385 F.3d 23, 30 (1st Cir.2004), *cert. granted. judgment vacated by* —— U.S. ——, 126 S.Ct. 1329, 164 L.Ed.2d 43 (2006) (quoting *Acevedo–Díaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993)).

The defendants maintain that regardless of Ms. López' political affiliation, they would have taken the same action against her after determining that the appointment was null and void. *See Sánchez López v. Fuentes Pujols,* 375 F.3d at 131–32. I cannot conclusively hold that defendants' determination regarding the illegality of Ms. López' appointment was correct as a matter of law. Considering the changes in her job descriptions and numerous classifications (trust, transitory, regular, permanent), I find that reasonable minds could differ as to whether Ms. López would have qualified to receive career status under Law No. 256, particularly since the OCALARH letter left the decision to Mr. Vergara. A jury could reasonably conclude that the defendants concluded, in clear disregard to the letter of OCALARH and with a politically motivated animus, that simply because Ms. López did not qualify for career status under Law No. 256, that she also did not qualify to be included in the preferential registry. Notwithstanding the defendants' argument that because of the pay scale, the Job Corps director position was one of trust, there is credible evidence in the trial record which reflects that it was not. Furthermore, if it was not a trust position, and plaintiff held a career position when Law 256 came into effect, then a reasonable jury could conclude that

political affiliation was a motivating factor for not placing plaintiff on a preference registry, indeed, for not creating such a preference registry, particularly since a PPD member started performing her duties, and her position, a position she qualified for, has remained vacant until now.

In *Sánchez López v. Fuentes Pujols*, 375 F.3d at 130–33, the First Circuit expanded on the burden that a defendant has under *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 286, 97 S.Ct. 568, to show that they would have taken the same employment action without regard to a political consideration. The court held that while discrimination cannot be established as a matter of law by demonstrating that political affiliation was a motivating factor in the employer decision, *Sánchez López v. Fuentes Pujols*, 375 F.3d at 131, likewise, a defendant's *Mt. Healthy* burden is not discharged by simply showing that the appointments were illegal under local law. *Id.* at 133. Therefore, in view of the evidence submitted by the plaintiff, and my reservations as to the correctness of defendant's determination with respect to the legality of Ms. López' appointment to career status under Law No. 256, I cannot conclude as a matter of law that the co-defendants defeat liability by simply showing that the appointments were null and void. *See Acosta–Orozco v. Rodríguez–de–Rivera*, 132 F.3d 97, 101 n. 4 (1st Cir.1997) (quoting *Santiago–Negrón v. Castro–Dávila*, 865 F.2d 431, 436 (1st Cir.1989)) (" '[A] new administration [cannot] use the "nullity" of appointments doctrine as a cover of discharges, transfers, and discrimination based solely on political affiliation.' "); *see also Arizmendi–Corales v. Rivera*, 176 F.Supp.2d 114, 120 (D.P.R.2001).

In summary, the evidence in the light most hospitable to the non-movant does not lead to one conclusion, but does support the finding that political affiliation was a motivating factor in plaintiff's termination. The same evidence could also lead a reasonable jury to determine that political affiliation was a motivating factor in not including plaintiff in a preference registry, given the clear language of Law 256, a finding that plaintiff's position was not a trust position, and that, consequently, there was no nondiscriminatory reason for excluding plaintiff from a preference registry list, particularly since in unison, all witness agreed that plaintiff's performance record was untarnished. *See, e.g., Borges–Colón v. Roman–Abreu*, 438 F.3d 1, 18 (1st Cir.2006). The Rule 59 motion is therefore DENIED.

## QUALIFIED IMMUNITY

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." *Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir.1997) (quoting *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 704 (1st Cir.1993)). From the totality of the evidence, a jury could determine that plaintiff had a property right in continued employment and that such a right was intentionally violated by the defendants. *See, e.g., Borges Colón v. Román–Abreu*, 438 F.3d at 19. The defendants are not entitled to prevail on the affirmative defense of qualified immunity since it was clearly established in 2002 that discharging someone based upon political affiliation from a position other than trust violated plaintiff's constitutional rights. Plaintiff was not advised that she was being discharged because she held a trust position. The jury could infer that since higher-paid Job Corps posi-

tions were federally funded, they were not trust positions, even if the salaries were within the range of classified trust positions. Impermissible motivation and intent, factors which weigh heavily in a political discrimination case, were yet matters to be considered by a jury and resolved by them. *See Acevedo–García v. Vera–Monroig,* 204 F.3d 1, 11 (1st Cir. 2000). Thus, the defendants cannot prevail post hac in a defense of qualified immunity.

## JURY INSTRUCTIONS

The instructions that the defendants object to now were not objected to before the jury was sent to deliberate and immediately after they were given. Rule 51(c)(1), Federal Rules of Civil Procedure; *Gómez v. Rivera Rodríguez,* 344 F.3d 103, 118 (1st Cir.2003); *see Rodríguez–Marín v. Rivera–González,* 438 F.3d 72, 82. The working conditions of plaintiff were mentioned during trial and while they may not have reached the level where their inferior nature necessarily reflected a discriminatory animus, together with other evidence, a reasonable jury could find that the treatment was relevant to a discriminatory animus leading to the discharge. These instructions do not vary in great detail from those given in political discrimination cases and plain error is lacking in them, assuming error was committed at all.

## JURISDICTIONAL ISSUE

The defendants renew the argument that the case should have been stay pending action by JASAP with respect to plaintiff's termination. However, JASAP has yet to decide any issue regarding the dismissal of plaintiff in the years that the matter has been pending there, and such review appears at this writing to be futile. This alone is sufficient reason for not granting a stay of the action. Further-

more, JASAP's remedies are limited. JASAP will not determine whether plaintiff's federal constitutional or statutory rights have been violated, and JASAP cannot award compensatory or punitive damages for violations of a federally protected right. *See Olivo–González v. Teacher's Ret. Bd.,* 208 F.Supp.2d 163, 168–69 (D.P.R.2002); *Ortiz Navarro v. Puerto Rican Cars, Inc.,* 106 F.Supp.2d 302, 304 (D.P.R.2000); *cf. Rivera–Feliciano v. Acevedo–Vila,* 438 F.3d 50, 60 (1st Cir.2006).

## REMITTITUR/PUNITIVE DAMAGES

 The jury awards are not exaggerated and reflect compensation for lost earnings which amount could be reached mathematically from the evidence presented at trial. The punitive damages bear even less comment. The purpose of punitive damages is to punish and deter reprehensible conduct. *Rodriguez–Marin v. Rivera–González,* 438 F.3d 72, 84 (1st Cir. 2006) (citing *Romano v. U–Haul Int'l,* 233 F.3d 655, 672 (1st Cir.2000)). The Supreme Court has said that a jury may award punitive damages where the defendant's behavior is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Borges–Colón v. Román–Abreu,* 438 F.3d 1, 20–21 (1st Cir.2006). The Supreme Court also provides guideposts to consider in determining the excessiveness of a punitive damages award: "(1) the degree of reprehensibility of a defendant's conduct; (2) the ratio between punitive and actual and potential damages; and (3) a comparison of the punitive damages figure and other civil and criminal penalties imposed for comparable conduct." *Rodriguez–Marin v. Rivera–González,* 438 F.3d at 84–8572 (quoting *Romano v. U–Haul Int'l,* 233 F.3d at 672–73) (citing *BMW of N. Am. v.*

*Gore,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). The amounts are not excessive if one considers that a reasonable jury could find that a competent public servant with an unblemished record, obviously intending to remain in government until 30–year retirement, was left without work, without a valid reason, and without an opportunity to regain a position for which she qualified, or for a similar position. I am not going to recite comparable awards in this district, since the recitation would reflect nothing of import. The punitive damages awards are reasonable. *See, e.g., Borges–Colón v. Román–Abreu,* 438 F.3d at 22; *Romano v. U–Haul Int'l,* 233 F.3d at 672.

In view of the above, the motion for judgment notwithstanding the verdict and for new trial are DENIED. The motions to dismiss based upon qualified immunity, to stay proceedings pending a determination by JASAP, and the motion for remittitur are also DENIED. The order granting post-trial stay on related issues is lifted, and the terms to oppose plaintiff's motions run beginning on the day following the filing of this opinion and order.

SO ORDERED.