Justino **ACEVEDO LUIS,** Plaintiff,

v.

Yolanda **ZAYAS, Secretary, Department of the Family; Mercedes Pagán, Aguadilla Regional Director, Family Department, in their official and personal capacities, Defendants.**

Civil 03–1376(SEC)(JA).

United States District Court,
D. Puerto Rico.

Feb. 28, 2006.

**118**

Irael Roldán–González, Aguadilla, PR, for Plaintiff.

María Eugenia Villares–Seneriz, Department of Justice, San Juan, PR, for Defendants.

## OPINION AND ORDER

ARENAS, Chief United States Magistrate Judge.

Plaintiff Justino Acevedo Luis, a member of the New Progressive Party, began working for the Family Department on April 16, 1978 as a career employee. He was appointed Technician I, later to Technician II, then Technician III, then supervisor and finally Local Director II, at the San Sebastián office of the Family Department. On April 18, 2002, co-defendant Mercedes Pagán gave plaintiff a letter signed by co-defendant Yolanda Zayas, which letter ordered plaintiff's transfer to the office of Aguadilla. (Joint Ex. I.) The letter assigned no responsibilities or duties to plaintiff in his new position. This transfer resulted from the San Sebastián office being placed in charge of Juan Sotomayor, a member of the Popular Democratic Party, as the result of a court order. While plaintiff had many responsibilities at the San Sebastián office, he had practically none at the Aguadilla office.

On April 8, 2003, plaintiff filed this civil action based upon violations of the Civil Rights Act, 28 U.S.C. § 1983, and Puerto Rico and United States Constitutions. Claims invoking the court's supplemental jurisdiction are also included in the complaint. A jury trial began on November 21, 2005, and on November 28, 2005, the jury returned a general verdict in favor of plaintiff and against the remaining defendant, Mercedes Pagán, awarding no compensatory damages, and punitive damages in the amount of $5,000. (Docket No. 60.) Both parties have attacked the verdict.

## PLAINTIFF'S POST TRIAL MOTIONS

On December 7, 2005, plaintiff moved pursuant to Rule 59(a) and 59(e), Federal Rules of Civil Procedure, for a new trial on damages, basing his argument on there having been committed a manifest error of law, and also in order to prevent manifest injustice. Plaintiff argues that in cases involving constitutional guarantees, plaintiffs may recover nominal, compensatory, and punitive damages, particularly since "damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff emphasizes that nominal damages are awarded where a violation of constitutional rights is established, but the plaintiff is unable to demonstrate measurable monetary damages. *See Carey v. Piphus*, 435 U.S. 247, 266–67 n. 24, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Plaintiff sums up his argument by referring to a well-traveled quote: "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Plaintiff preserved objections to my not giving two

instructions to the jury, including the following.

The First Amendment to the Constitution of the United States, guarantees every citizen Freedom of Expression and Freedom of Association. This includes the freedom to speak in favor of or against any political party or candidate and also includes the right to support or affiliate or be known as member of any political party or support any candidate. The loss of First Amendment Freedom for even minimal periods of time unquestionably constitutes irreparable injury. Citing *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822.

Docket No. 61, at 6.

Plaintiff argues that this instruction would have given the jury a clear directive to award damages to plaintiff because of his loss of First Amendment freedoms, and that such instruction would have given them a clear guideline regarding their duty to award damages, based on specific violations of his freedom of expression and freedom of association, both secured by the First Amendment. Plaintiff clearly notes that a violation of a constitutional right is compensable and that the jury determined that the defendants' acted maliciously, thus awarding punitive damages.

Plaintiff also argues that I erred in instructing the jury that they could consider the financial resources of the defendant in fixing the amount of punitive damages. Plaintiff timely objected to my failure to give this instruction, in view of the provisions of Law No. 9, of November 26, 1975, P.R. Laws Ann. tit. 32, § 3085, which provides for the Commonwealth Government paying the amount of a verdict in certain circumstances. Law No. 9 states as follows:

Every official, ex-official, employee or ex-employee of the Commonwealth of Puerto Rico who is sued for damages in his personal capacity, when the cause of action is based on alleged violations of the plaintiff's civil rights, due to acts or omissions committed in good faith, in the course of his employment and within the scope of his functions, may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person.

P.R. Laws Ann. tit. 32, § 3085.

Plaintiff argues that since no evidence was presented as to the defendants' financial resources, it was error to give such an instruction. Plaintiff concludes that the award of zero damages is unreasonable and merits a partial new trial limited to the issue of damages alone.

### DEFENDANT'S POST TRIAL MOTIONS

On December 13, 2005, defendant Mercedes Pagán de Guntín moved for judgment as a matter of law since there was no evidence upon which a jury could have properly proceeded to find a verdict for plaintiff, and that a directed verdict should have been entered. On the other hand, the defendant argues that the jury clearly reached an erroneous result, and that letting the verdict stand would result in a blatant miscarriage of justice, since there was clearly insufficient evidence to warrant the award of punitive damages. The defendant argues that a *prima facie* showing of political discrimination was never made, and that plaintiff never proved an adverse employment action. Furthermore it is argued that plaintiff does not have a property right over his duties. Finally, the defendant argues that she is entitled to qualified immunity. Plaintiff opposed the

motions on December 27, 2005, arguing that at trial he established with sufficient evidence that he was the victim of political discrimination, and that the defendant acted under color of authority, having done so willfully and intentionally, and that her conduct violated plaintiff's constitutional rights.

Plaintiff, a public employee for 25 years, testified at trial, retracing his career path to the position he held on October 16, 2001, that is, director of the local office (or local director of the office) of the Family Department in San Sebastián. In that position he assured that family laws were complied with, signed checks, worked with personnel and made sure that supervisors complied with their work plans giving services to the public. He worked with technicians and other workers in rendering service to the public. He also worked with minors in the community. About 90 to 98 persons worked under him. The San Sebastián office was the largest office in the region. In fact, there were two San Sebastián offices, San Sebastián I and San Sebastián II. Juan Sotomayor, a member of the Popular Democratic Party, and formerly a municipal assemblyman, was in charge of San Sebastián I, and plaintiff was in charge of San Sebastián II. Plaintiff belongs to the New Progressive Party, and was also a municipal assemblyman. Plaintiff and Mr. Sotomayor were roommates in college but kept a necessary distance professionally.

As a result of an integration of San Sebastián Offices I and II, plaintiff was transferred to Aguadilla and was supposed to receive new orders and be assigned new duties from the remaining defendant. (Joint Ex. I.) Mercedes Pagán, a member of the Popular Democratic Party, gave him the letter transferring him on May 6, 2002. When he reported to his new job, Mercedes Pagán said there were no tasks but that he was to help Olga Vélez who was the associate director. Olga Vélez had no tasks to give plaintiff. There was no one to supervise. There was no office, and there were no duties. Plaintiff did help to prepare reports that clerks would prepare. Those reports, which had to do with the movement of children, were sent by fax to the regional office and took, at most, an hour to prepare every Monday morning. When Olga Vélez retired months later, he no longer had those reports to prepare. In a typical day, there was nothing to do. He read magazines, newspapers.

Plaintiff felt humiliated, useless, like someone stealing his salary, since his capabilities were being lost, although he did some monitoring for a few months. On the date that he was given the letter, May 6, 2002, there were vacant director positions in Las Marías, Aguada and Rincón. On October 14, 2005, plaintiff was relocated to the vacant position at the office in Aguada.

Plaintiff has never been admonished and has never received any complaints about his work in 25 years. When asked why he spent 3½ years doing nothing in Aguadilla, he responded that it was because he was a member of the New Progressive Party.

Aida Sierra Ramos, a member of the PNP, who works for the Family Department in Aguadilla, testified that she worked two desks away from plaintiff when plaintiff was transferred and that he had no duties assigned. He would make coffee, read the newspaper. At monthly meetings, he would make copies and every Monday he would make a report about biological parents, something which could be done in 1½ hours. Clerks generally make the photocopies.

Mercedes Pagán brought Sierra Ramos back to her position. During her own work week, she was out a good part of the

time and did not know what plaintiff would be doing when she was out.

Aida Droin, also a member of the PNP, who works for the Family Department in Aguadilla, also testified that she was at the office when plaintiff was transferred there. He had no duties and continued to have no duties until he was transferred to the Aguada office as local director in 2005.

Víctor González, Assistant Director for Human Resources of AAA, testified about the reorganization at the Department of the Family in 1995, the purpose of which was to turn the Department of the Family into an umbrella department and to decentralized its functions. Thus employees were sent from the four central administrations to the 10 regions, that is, the local offices. As a result, there were more positions for director than were actually needed. Thirty-five offices were integrated. Some towns had two, three, four, or five offices. These were reduced to one office with all of the services. Thus, towns with two or more offices had them integrated into one. The employees' salaries were not affected and their functions remained similar.

González testified that Juan Sotomayor was brought back to his position as a result of a court order (Ex. A); Sotomayor's position had been annulled several years earlier but he was reinstated in Aguadilla although he had requested San Sebastián.

Rather than appeal the order, González decided to comply with the same so Sotomayor was reinstated in Aguadilla II at the beginning. However, the judgment specified that reinstatement was to be made in his original position, so the department put Sotomayor in San Sebastián II. Justino Acevedo was in the other position, at San Sebastián I. Because of the regionalization, and because of the court order with which the department had to comply, there was only room for one director in San Sebastián so Mr. Sotomayor was kept there and placed into San Sebastián I, and plaintiff was sent to Aguadilla where his services were needed, performing similar functions. (Joint Ex. II.) Plaintiff was never sent a form OP–16 with a description of his duties because certain procedures had to be evaluated to complete the transfer, this after 3½ years. Needs in the different regions had to be identified and evaluated, and a budgetary allotment had to be requested, which took some time. González understood that plaintiff had been assigned duties, although the department has 10,000 employees and González' office was in San Juan.

In Aguadilla, plaintiff was assigned González' duties as an assistant. Plaintiff's salary was never reduced. Plaintiff never requested a transfer and there were no other director positions available after plaintiff was transferred.

Juan Sotomayor López, a PPD member, testified that he worked for the Department of the Family as deputy regional director in 1994, having been demoted from regional director in 1993. The NPP won the election. It was determined that he got his position illegally. The decision was appealed to JASAP, the Administration System Board of Appeals, which ruled in his favor. He was reinstalled in Aguadilla II in February 2000. At the court of appeals, he won reinstatement.

Mercedes Pagán Guntín, an active member of the PPD, testified that she has worked in the Department of the Family for 34 years and holds an Executive V position as assistant to the regional director, a career position since 1985. She recalled that plaintiff was relocated since Juan Sotomayor had won his appeal and had to be relocated first to Aguadilla and then to the San Sebastián office. Plaintiff

had been the director of both of the San Sebastián offices, but with the arrival of Sotomayor, the latter had to be the director of both offices. Pagán did not make the decision to transfer plaintiff. She received a letter that plaintiff would be going to the office in Aguadilla and she sent the letter to Olga Vélez, and gave instructions for her to please assign administrative duties to plaintiff. (Ex. C.) Pagán has known plaintiff for 28 years and had no criticism of him or his work.

Plaintiff sent Pagán a letter on April 29, 2002 describing a personal situation regarding his own spouse and drawing Pagán's attention to a possible situation of nepotism which could arise if Sotomayor were to be the San Sebastián director. (Ex. B.) Pagán referred the letter to Víctor Maldonado, Director of Human Resources, for further action, and although she discussed doing this with plaintiff, the letter was never answered. Pagán wrote the acting director of the area where plaintiff worked that he had complained to her on several occasions that he had no assignments. (Ex. F.) Pagán received a letter from Vélez in relation to plaintiff's having no duties. Pagán noted that Vélez should have complied with the instructions to assign plaintiff tasks. All along she understood that plaintiff had had duties assigned to him.

## DISCUSSION

 In the discussion that follows, with the focus on Rule 50, Federal Rules of Civil Procedure, the facts as presented at trial are viewed in a "light most favorable to the jury verdict." *Cruz–Vargas v. R.J. Reynolds Tobacco Co.,* 348 F.3d 271, 275 (1st Cir.2003), *cert. denied,* 543 U.S. 959, 125 S.Ct. 413, 160 L.Ed.2d 323 (2004); *Vázquez–Filippetti v. Banco Popular de P.R.,* 385 F.Supp.2d 114, 115 (D.P.R.2005). "A motion under Rule 59(e) must rely on

at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice." *Román v. Delgado Altieri,* 390 F.Supp.2d 94, 110 n. 5 (D.P.R.2005) (citing *Standard Química De Venezuela v. Central Hispano Int'l, Inc.,* 189 F.R.D. 202, 205 n. 4 (D.P.R. 1999)). The third-prong is the one that the parties focus on in their post-trial motions.

 It is firmly established "that political patronage restrains [a person's] freedom of belief and association, core activities protected by the First Amendment" of the United States Constitution. *Padilla–García v. Rodríguez,* 212 F.3d 69, 74 (1st Cir.2000). "The Supreme Court has been ... clear [in holding] that non-policymaking public employees are constitutionally protected from adverse employment decisions on account of their political affiliation." *Gómez v. Rivera–Rodríguez,* 344 F.3d 103, 109–10 (1st Cir.2003) (citing *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 516–17, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. at 372–73, 96 S.Ct. 2673). "A *prima facie* case of political discrimination is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that such conduct was a substantial or motivating factor in the adverse employment decision." *López–Sánchez v. Vergara–Agostini,* 359 F.Supp.2d 48, 53 (D.P.R.2005) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–García v. Rodríguez,* 212 F.3d at 74). A plaintiff has to prove that his or her political persuasions were a substantial or motivating factor in the challenged action. *Ortiz–Piñero v. Rivera–Arroyo,* 84 F.3d 7, 11–12 (1st

Cir.1996); *Rivera–Cotto v. Rivera,* 38 F.3d 611, 613 (1st Cir.1994).

Once a *prima facie* case has been established, then the [government] employer must [show] that it would have taken the same action regardless of plaintiff's political beliefs. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 287, 97 S.Ct. 568. The burden-shifting framework in *Mt. Healthy* goes directly to causation. *Padilla–García v. Rodríguez,* 212 F.3d at 74. Although plaintiff may meet his initial burden of establishing that political affiliation or beliefs were a motivating factor in the adverse employment decision, "that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[ ] between a result caused by a constitutional violation and one not so caused.'" *Sánchez–López v. Fuentes–Pujols,* 375 F.3d 121, 131 (1st Cir.2004) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. at 286, 97 S.Ct. 568). The plaintiff then needs to show that there is a causal connection linking the adverse employment action to his political persuasions. *Torres–Ocasio v. Meléndez,* 283 F.Supp.2d 505, 515 (D.P.R. 2003) (citing *LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996)).

*López–Sánchez v. Vergara–Agostini,* 359 F.Supp.2d at 59.

In order to prevail on a Rule 50 motion, the defendants "need to show that no reasonable jury could have denied their *Mt. Healthy* defense." *Rodríguez–Marín v. Rivera–González,* 438 F.3d 72, 82 (1st Cir. 2006) (citing *Sheils Title Co. v. Commonwealth Land Title Ins. Co.,* 184 F.3d 10, 19 (1st Cir.1999)).

▮ The defendant's first post trial contention is that plaintiff has failed to establish a *prima facie* case that he suffered an adverse employment action sufficiently se-

vere to give rise to a constitutional violation. According to the defendant, the plaintiff has not lost his job and continues to earn the same salary in the same type of career post he was appointed. Furthermore, according to the defendant, plaintiff's work situation was not unreasonably inferior to the norm for the position. *See, e.g., Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1217 (1st Cir.1989).

In *Agosto–de–Feliciano,* the First Circuit held that in evaluating a charge of political discrimination, specifically with respect to the severity of the harm allegedly caused by new working conditions short of discharge, the court must "determine whether the new work conditions would place substantial pressure on even one of thick skin to conform to the prevailing political view." *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d at 1218. The First Circuit instructed that to reach this level of burden, the challenger of an employment action must show, *through clear and convincing evidence,* that the action of the employer "result[ed] in a work situation 'unreasonably inferior' to the norm for the position." *Id.; see Rivera–Ruiz v. González Rivera,* 983 F.2d 332, 335 (1st Cir.1993); *Rodríguez–Pinto v. Tirado-Delgado,* 982 F.2d 34, 39 (1st Cir.1993). The *Agosto–de–Feliciano* court added that the fact finder's task would be "to determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title." *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d at 1220. In *Rutan v. Republican Party of Ill.,* 497 U.S. at 75–76, 110 S.Ct. 2729, the Court held that politically motivated employment decisions short of actual or constructive discharge infringe a government employee's first amendment rights because "there are deprivations less harsh than dismissal that nevertheless press state employees . . . to conform their

beliefs and associations to some state-selected orthodoxy." *Id.* at 75, 110 S.Ct. 2729. Moreover, the Court intimated that the First Amendment protects a public employee "not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights.'" *Id.* at n. 8 (quoting *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954 n. 4 (7th Cir.1989)); *see Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 12 (1st Cir.2000). The First Circuit has hinted at the possible survival of the standard in *Acosta–Orozco v. Rodríguez–De–Rivera*, 132 F.3d 97, 101 n. 5 (1st Cir.1997), where it was stated that the appeals court did not regard the language found in footnote 8 of *Rutan* as foreclosing the "unreasonably inferior" rule for personnel actions short of demotions.

Plaintiff's salary remained the same when he reported to his new job in Aguadilla. Mercedes Pagán told him there were no tasks but that he was to help Olga Vélez, the associate director. She also had no tasks to give plaintiff. Plaintiff had no one to supervise, no office, and no duties. Plaintiff did however help to prepare reports that clerks, not a local director, would prepare. Those reports, which had to do with the movement of children, were sent by fax to the regional office and took, at most, an hour to prepare every Monday morning. When Olga Vélez retired months later, plaintiff no longer even had those reports to prepare. Typically, there was nothing to do. Plaintiff, previously a local director who supervised almost 100 people, read magazines and newspapers, and made coffee. On May 6, 2002, there were vacancies for director in Las Marías, Aguada and Rincón. A jury could reasonably find that he spent 3½ years doing nothing and that there was a discriminatory animus behind that action, particularly when there were positions vacant in the region for which plaintiff qualified such as in the above towns. *Cf. González Piña v. Rodríguez*, 407 F.3d 425, 432 (1st Cir. 2005); *Muñiz–Cabrero v. Ruiz*, 826 F.Supp. 591, 599 (D.P.R.1993). Even more, a reasonable jury could have also found subterfuge, after a so called reorganization, in the fact that a Form OP–16 was never issued in 3½ years and that plaintiff sat at a desk waiting for duties which never arrived, in a position where, according to the correspondence of Mercedes Pagán, there was a great need for his services. (Ex. II, Ex. C, Ex. D, Ex. F.) While not disposing of the matter, the lack of an OP–16, together with other evidence, could lead a fact-finder to consider impermissible motivation in the failure to assign duties under the circumstances. *Cf. Ortiz–Piñero v. Rivera–Arroyo*, 84 F.3d at 13–14. After all, evidence of substance as to what plaintiff was supposedly doing could have been presented by the defense and was not. Therefore, there is not even a veiled denial in the record that plaintiff did practically nothing during those years in Aguadilla.

## QUALIFIED IMMUNITY

The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In defining the limits of this good-faith defense, the Supreme Court has stated that "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, ... a person who suffers injury caused by such conduct may have a cause of action." *Id.* at 819 (foot-

note omitted). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Acevedo–García v. Vera–Monroig*, 204 F.3d at 10 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus the court needs to determine (1) whether the constitutional right allegedly involved is a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right. *Fletcher v. Town of Clinton*, 196 F.3d 41, 48 (1st Cir.1999). In other words, once it is determined that the alleged conduct violates a clearly established constitutional right, the court must still determine whether an objectively reasonable official with the information that he or she possessed at the time would have believed that his or her conduct was lawful. *See McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir.1991).

■ Pagán contends that she is entitled to qualified immunity, because it was objectively reasonable for her to believe that by complying with the orders of Yolanda Zayas and the court order, and by giving directives for the employment of plaintiff in Aguadilla, she was not violating plaintiff's clearly established constitutional rights.

The case having proceeded to trial, I had already determined that there are factual issues that needed to be resolved by the trier of fact with respect to whether plaintiff's political affiliation was a substantial or motivating factor for the adverse employment action taken by the then defendants. At the same time, said factual inquiry is key to the determination of whether those defendants reasonably believed they were not violating clearly established rights.

■ The qualified immunity defense recognizes "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The state of the law is and was clear. A government employer may not reassign tasks on the basis of party affiliation. *See Acosta–Orozco v. Rodríguez Rivera*, 132 F.3d at 103 n. 7. Additionally, depriving a plaintiff of his responsibilities and leaving him without real duties constitute unreasonably inferior working conditions. *See Rodríguez–Pinto v. Tirado–Delgado*, 982 F.2d at 39–40; *Pagán–Cuebas v. Vera–Monroig*, 91 F.Supp.2d 464, 473 (D.P.R.2000); *cf. Ortiz García v. Toledo Fernández*, 405 F.3d 21, 23–24 (1st Cir.2005); *Pedros–Cos v. Contreras*, 976 F.2d 83, 85 (1st Cir.1992). The jury's awarding punitive damages against the remaining defendant reflects the view that she acted with malice or wilfulness or with callous and reckless indifference to plaintiff's federally protected rights. *Rodríguez Vázquez v. López Martínez*, 253 F.Supp.2d 164, 166 (D.P.R.2003); *see Marín–Piazza v. Aponte–Roque*, 873 F.2d 432, 435 (1st Cir.1989). The award also serves as guidance in determining that the defendant is not entitled to qualified immunity. *Rodríguez Vázquez v. López Martínez*, 253 F.Supp.2d at 166. Therefore, the affirmative defense of qualified immunity is rejected.

## COMPENSATORY DAMAGES

■ Plaintiff complains at the ironic lack of compensatory damages and that

as a result of excluding an instruction he proposed, and which was rejected, he is entitled to a new trial to avoid manifest injustice, particularly since any injury triggering a First Amendment violation, even a momentary violation, is irreparable. Plaintiff stresses that the jury was required to award compensatory damages. However, it is clear that juries are not required to award compensatory damages when they find liability, in all instances. Indeed, nominal recovery is not so rare as to be a required topic for discussion. *See, e.g., Gómez v. Rivera–Rodríguez,* 344 F.3d at 122, appendix. "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights[.]" *Carey v. Piphus,* 435 U.S. at 254, 98 S.Ct. 1042. "For this reason, no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury." *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing *Carey v. Piphus,* 435 U.S. at 264, 98 S.Ct. 1042). In this case, the jury may have been hard put to evaluate actual injury aside from the frustration and humiliation which plaintiff suffered doing nothing for 3½ years. While not instructed on the right to award nominal damages, (and such an element was not provided for in the verdict form), the jury was instructed extensively on the element of compensatory damages, if not in the specific words proposed by plaintiff, and that they could award damages for emotional and mental distress. I did not give the proffered instruction because, while the proffered statement was correct in its original context, that is, in describing one prong in the four-prong requirement for a preliminary injunction, *Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. 2673, it would not be helpful to a jury in determining an amount of damages to repair injury which the instruction describes as irreparable. That the jury chose not to award

compensatory damages does not *a fortiori* mean that they did not sufficiently follow the instructions and that they did not find that plaintiff's constitutional rights were violated. *Smith v. Wade,* 461 U.S. 30, 55 n. 21, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Carey v. Piphus,* 435 U.S. at 266, 98 S.Ct. 1042. "[A]s a matter of federal law, a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages." *Campos–Orrego v. Rivera,* 175 F.3d 89, 97 (1st Cir.1999) (footnote and citations omitted.); *cf. Kerr–Selgas v. Am. Airlines, Inc.,* 69 F.3d 1205, 1215 (1st Cir. 1995).

 Plaintiff mentions in his Rule 59 motion that nominal damages are awarded where a violation of constitutional rights is established and the plaintiff is unable to demonstrate measurable monetary damages. However, I did not give an instruction on nominal damages and apparently was not requested to give such an instruction. Finally, there was no objection to the general verdict form which provided only for punitive and compensatory damages.

## PUNITIVE DAMAGES

 The jury award of $5,000 in punitive damages is not exaggerated. The amount of the award of punitive damages does not welcome extensive comment. The purpose of punitive damages is to punish and deter reprehensible conduct. *Rodríguez–Marín v. Rivera–González,* 438 F.3d at 84–85 (citing *Romano v. U–Haul Int'l,* 233 F.3d 655, 672 (1st Cir.2000)). The Supreme Court has said that a jury may award punitive damages where the defendant's behavior is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

*Smith v. Wade,* 461 U.S. at 56, 103 S.Ct. 1625; *Borges–Colón v. Román–Abreu,* 438 F.3d 1, 21–22 (1st Cir.2006). The Supreme Court also provides guideposts to consider in determining the excessiveness of a punitive damages award: "(1) the degree of reprehensibility of a defendant's conduct; (2) the ratio between punitive and actual and potential damages; and (3) a comparison of the punitive damages figure and other civil and criminal penalties imposed for comparable conduct." *Rodríguez–Marín v. Rivera–González,* 438 F.3d at 84–85 (quoting *Romano v. U–Haul Int'l,* 233 F.3d at 672–73) (*BMW of N. Am. v. Gore,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). The amount is not excessive if one considers that a reasonable jury could find that a dedicated competent public employee with a clean employment record, a local director of the Department of the Family, suddenly found himself with veritably nothing to do, a status which can be termed degrading and humiliating for someone accustomed to great responsibility, a responsibility with which plaintiff obviously had complied prior to his transfer to Aguadilla. This coupled with the distinct, uncontroverted reality that there were vacancies within a reasonable short commuting distance, which plaintiff was competent to fill, and the real or constructive knowledge that the defendant had that plaintiff had no assigned duties. Together with the evidence of juxtaposing adverse, strong political affiliations was sufficient to support the award of punitive damages. In short, the punitive damages award are reasonable. *See, e.g., Borges–Colón v. Román–Abreu,* 438 F.3d at 22; *Romano v. U–Haul Int'l,* 233 F.3d at 672.

## JURY INSTRUCTIONS

■ Plaintiff attacks the jury instructions in a timely fashion. Rule 51, Federal Rules of Civil Procedure. Again, I did not give plaintiff's requested instruction on the irreparable nature of First Amendment violations because I believed that the elements of damages were well covered by the other instructions on the manner in which damages are to be considered and determined. It is clear that "there is no requirement that the trial court instruct the jury in the precise form and language requested." *Hiraldo–Cancel v. Aponte,* 925 F.2d 10, 13 (1st Cir.1991) (quoting *United States v. Passos–Paternina,* 918 F.2d 979, 984 (1st Cir.1990)). I also believe that the instructions on the substantive law and elements of damages adequately reflect the law applicable to the controlling issues without risking confusion or the possibility of misleading the jury. *See O'Connor v. Huard,* 117 F.3d 12, 15 (1st Cir.1997) (citing *United States v. Fulmer,* 108 F.3d 1486, 1494 (1st Cir.1997)).

■ Plaintiff objected to my giving the punitive award instruction to the jury when no evidence was ever presented as to the defendant's ability to pay the award. Plaintiff argues that the instruction overlooks the protection which Law 9 gives government employees sued in their personal capacity when they have violated someone's civil rights. Thus plaintiff argues that the jury never had a chance to understand the protection offered to the defendant through Law 9 and mistakenly had to guess as to the defendant's personal wealth.

■ If the ability of the defendant to pay the punitive damages award is the linchpin of plaintiff's argument, it fails. The $5,000 amount awarded by the plaintiff is sufficiently conservative for the jury not to have to speculate as to whether the defendant was capable of paying the same. The plaintiff presses upon the court the right of the jury to know the government would pick up the tab and that therefore

the jury was unnecessarily and incorrectly limited in its ability to award more damages. This argument also fails. That Law 9 applies to the defense and the possible indemnification of the defendant does not mean that the jury was required to know that there was a pocket deeper than that of the defendant which would be available to pay the judgment. The Commonwealth government may, but is not required to pay the punitive damages award. *See Saldana–Sánchez v. López–Gerena*, 256 F.3d 1, 8–10 (1st Cir.2001); *Ortiz–Feliciano v. Toledo–Dávila*, 175 F.3d 37, 39 (1st Cir. 1999).

In view of the above, I find that a reasonable jury could have denied the defendant's *Mt. Healthy* defense. I further find that there is no need to correct a clear error of law or prevent manifest injustice resulting from this jury verdict. The motions for judgment notwithstanding the verdict and for new trial are DENIED. The order granting post-trial stay on the motion for attorney's fees is lifted, and the terms to oppose plaintiff's motion run beginning on the day following the filing of this opinion and order.